UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL STEIN and LOUIS NOVAK,

    Plaintiffs,

No.:

v.

CHRISTOPHER THOMAS, in his official capacity as Director of Elections; and JEANETTE BRADSHAW, NORMAN D. SHINKLE, JULIE MATUZAK, and COLLEEN PERO, in Their Official Capacities as Members of the Board of State Canvassers,

    Defendants.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs Jill Stein and Louis Novak (collectively "Plaintiffs"), by and through their attorneys, Goodman Acker, P.C., and for their Complaint pursuant to FRCP 15(a)(1)(A) for declaratory and injunctive relief against, Christopher Thomas, in his official capacity as Director of Elections; and Jeanette Bradshaw, Norman D. Shinkle, Jule Matuzak, and Colleen Pero, in their official Capacities as Members of the Board of State Canvassers.

1

# INTRODUCTION

1. Plaintiffs bring this action to vindicate the federal Constitutional rights of Michigan voters, who are in imminent danger of being disenfranchised in the 2016 Presidential election.

2. For Michiganders' votes to be counted in the Electoral College, Michigan must complete a recount of votes by December 13, the federally imposed deadline for the selection of electors to the Electoral College. Today, Christopher Thomas, Director of Elections, announced that he would not begin the recount until two business days—and four calendar days—following the resolution of any "objections" to the recount, which objections were rejected today by the Michigan Board of State Canvassers (the "Board"). Such needless delay risks that the recount will not be completed before the deadline—a result which would render the presidential vote in the state of Michigan utterly meaningless.

3. The refusal of Michigan's election apparatus to proceed with the recount now, when it can still make a difference, blocks a meaningful and impactful audit of an electronic vote tabulating system that, according to every leading expert, is frighteningly vulnerable to hacking and unreliable unless checked against readily available paper records—citizens' ballots. The effect of this move is to deny Michiganders a full accounting of the truth about what

happened in this critical election, a voice in the Electoral College, and their constitutional rights.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343(a)(3) and 1357; and 42 U.S.C. § 1983.

5. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is in this district is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Jill Stein is the Green Party presidential candidate, whose name appeared on the ballot in Michigan.

8. Plaintiff Louis Novak is a voter in the State of Michigan.

9. Defendant Christopher Thomas is the Michigan Director of Elections and is being sued in his official capacity.

10. Defendant Jeanette Bradshaw is a member of the Michigan Board of State Canvassers and is sued in her official capacity.

11. Defendant Norman D. Shinkle is a member of the Michigan Board of State Canvassers and is sued in his official capacity.

12. Defendant Julie Matuzak is a member of the Michigan Board of State Canvassers and is sued in her official capacity.

3

13. Defendant Colleen Pero is a member of the Michigan Board of State Canvassers and is sued in her official capacity.

## FACTUAL ALLEGATIONS

*Voting System in Michigan and the 2016 Presidential Election*

14. Plaintiff Jill Stein is the Green Party presidential candidate for the November 2016 election, and her name appeared on the ballot in Michigan.

15. The State of Michigan relies exclusively on optical scan machines to tabulate the paper ballots of all voters.

16. Experts have repeatedly documented in peer-reviewed and state-sponsored research that these machines, which are essentially computers with reprogrammable software, have serious cybersecurity problems. In just a few seconds, anyone can install vote-stealing malware on a voting machine that silently alters the electronic records of every vote. Practically speaking, it is not possible to determine with certainty the absence of malicious software hiding within what might appear to be many thousands of lines of legitimate software code.

17. Whether voting machines are connected to the Internet is irrelevant. Sophisticated attackers such as nation-states have a developed a variety of techniques for attacking non-Internet-connected systems.

18. While the vulnerabilities of Michigan's voting machines have been known for some time, it continues to use these machines without adopting auditing procedures or other mechanisms for securing its voting system against interference.

19. Michigan's 2016 election results raise red flags regarding potential interference with election results. Of the 4,874,619 votes cast in Michigan in November, over 75,000 did not record a vote for the office of president. This discrepancy between total votes cast and votes cast for president—known as the "undervote"—represents 1.5% of the total vote in the state, and it is substantially higher than in recent presidential election years. The 75,335 undervotes is 50% more than the number of undervotes in 2012, though there are less than 2% more voters this year, and there are 41% more undervotes than in 2000. The number of undervotes also dwarfs the 10,704 margin between the top two candidates.

20. In light of the unreliable machines used to tabulate votes and the irregularities seen with undervotes, Plaintiff Jill Stein sought to verify the accuracy of the results for president in the State through a recount of paper ballots without relying on the faulty optical scan machines.

*Jill Stein's Petition for Recount*

21. On November 28, 2016, the Board of State Canvassers ("Board") held a hearing, in part, to certify the results of the 2016 presidential election. At

the hearing, Plaintiff Stein, through counsel, stated her intent to file a petition for a statewide recount of the presidential election.

22. During this hearing, Christopher M. Thomas, Director of Elections, requested authority to oversee any potential recount and assured the Board that a recount could be completed before December 13, 2016, the federal safe harbor date for the selection of electors. The Board granted Mr. Thomas that authority.

23. On November 30, 2016, Plaintiff Stein filed a Petition for a Recount with the Michigan Board of State Canvassers. Along with the Petition, Plaintiff Stein paid a filing fee of $973,250 to the State of Michigan.

24. After the Petition was filed, Mr. Thomas and his staff initiated plans to start the recount on Friday, December 2. The recount was scheduled to occur from 9 a.m. to 8 p.m. each day until completed, including weekends. Thomas expressed his confidence that the schedule would ensure completion of the recount by December 13.

25. On Thursday, December 1, Donald J. Trump filed objections to Plaintiff Stein's Petition. Mr. Trump objected to the petition on the following grounds: (1) even though Plaintiff Stein is a presidential candidate, as required under Michigan law to seek a recount, she was not permitted to do so; (2) a recount could not be completed by December 13th, if started on December 2nd;

6

and (3) the petition, which was sworn before a notary public, was not validly notarized.

26. The Board noticed meetings for December 2nd and 3rd and included on its agenda "resolution of any objections to the recount petition." The Bureau of Elections suspended its plans to begin the recount on December 2nd, stating that they have been "put on hold until the Board of State Canvassers makes a determination on the objection."

27. On December 2, 2016, the Board held a hearing regarding Mr. Trump's objections. At the conclusion of the hearing, the Board rejected each of Mr. Trump's objections.

28. Even though the Board rejected Mr. Trump's frivolous objections, Mr. Thomas concluded that the recount could not begin until at least two-business days elapsed. He relied on Mich. Comp. Law § 166.882(3) in reaching that conclusion. That statute reads, in part, as follows: "The board of state canvassers shall not begin a recount unless two or more business days have elapsed since the board ruled on the objections under this subsection, if applicable."

29. Mr. Thomas stated his intention to start the recount on the evening of Tuesday, December 6 or early on Wednesday, December 7 based on this directive. He could not assure the Board or the public that a recount starting on December 7 would be completed before December 13th.

30. If the Board fails to timely complete the recount by December 13, the State risks depriving all Michigan voters of their fundamental right to vote.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983; Fourteenth Amendment, Equal Protection

31. Plaintiffs incorporate by reference the foregoing as if set forth word for word.

32. Acting under color of state law, Defendants, by waiting two business days—and four calendar days—to begin the recount are maintaining and implementing a system of voting that denies Michigan voters the right to vote as compared to voters in other states.

33. Defendants, acting under color of state law, have deprived and severely burdened and threatened to deprive and severely burden Michigan voters, including Plaintiff Novak, of their fundamental right to vote.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983; Fourteenth Amendment, Due Process

34. Plaintiffs incorporate by reference the foregoing as if set forth word for word.

35. Acting under color of state law, Defendants, by waiting two business days—and four calendar days—to begin the recount are maintaining and implementing a system of voting that is fundamentally unfair and that denies and

severely burdens the right to vote and that violates substantive Due Process under the Fourteenth Amendment to the United States Constitution.

36. As a result, Michigan citizens, including Plaintiff Novak, will be denied the right to vote.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983; First Amendment

37. Plaintiffs incorporate by reference the foregoing as if set forth word for word.

38. Acting under color of state law, Defendants, by waiting two days—and four business days—to begin the recount are maintaining and implementing a system of voting that is fundamentally unfair and that denies and severely burdens the right to vote and that violates the First Amendment to the United States Constitution.

39. As a result, Michigan citizens, including Plaintiff Novak, will be denied the right to vote.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that the Court:

1. Declare that waiting two business days to begin the recount, which threatens to prevent the State from completing its statewide recount:

   a. Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by unreasonably burdening the right to vote of all Michigan citizens;

   b. Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by instituting a fundamentally unfair process that would render Michigan votes meaningless;

   c. Violates the First Amendment to the United States Constitution by effectively denying the right to vote of all Michigan citizens.

2. Declare that the rights and privileges of Plaintiffs and other citizens will be irreparably harmed without the intervention of this Court to secure those rights for the exercise thereof in a timely and meaningful manner; and

3. Enjoin preliminarily and permanently the Defendants, their agents, officers and employees, and all persons acting in concert or cooperation with them from waiting to begin a recount; and

4. Award Plaintiffs disbursements, costs, and attorneys' fees; and

5. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

GOODMAN ACKER, P.C.


_____/s/ Mark Brewer_____
Mark Brewer (P35661)
17000 W. Ten Mile Road, 2nd Floor
Southfield, MI 48075
 (248) 483-5000
mbrewer@goodmanacker.com

Dated:  December 2, 2016