UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JILL STEIN and LOUIS NOVAK, | No. 2:16-cv-14233 |
| Plaintiffs, | HON. MARK A. GOLDSMITH |
| v | MAG. ELIZABETH A. STAFFORD |
| CHRISTOPHER THOMAS, in his official capacity as Director of Elections; and JEANETTE BRADSHAW, NORMAN D. SHINKLE, JULIE MATUZAK, and COLLEEN PERO, in their official capacities as members of the Board of State Canvassers, | **DEFENDANTS' RESPONSE IN OPPOSITION TO EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Defendants._____/ | |

Mark Brewer (P35661)
Attorney for Plaintiffs
17000 West Ten Mile Road, 2nd Floor
Southfield, Michigan  48075
248.483.5000
mbrewer@goodmanacker.com

Denise C. Barton (P41535)
Heather M. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
_____/

# DEFENDANTS' RESPONSE IN OPPOSITION TO EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

                              Aaron D. Lindstrom (P72916)
                              Solicitor General
                              Counsel of Record

                              Denise C. Barton (P41535)
                              Heather S. Meingast (P55439)
                              Erik A. Grill (P64713)
                              Assistant Attorneys General
                              Attorneys for Defendants
                              Civil Litigation, Employment &
                              Elections Division
                              P.O. Box 30736
                              Lansing, Michigan  48909
                              517.373.6434

Dated:  December 4, 2016

## STATEMENT OF FACTS AND PROCEEDINGS

On November 28, 2016, the Defendant Board of State Canvassers (Board) certified the November 8, 2016 general election results, which included the results for the presidential race.[1]  Republican candidate Donald Trump received the highest number of votes (2,279,543), and Democrat candidate Hillary Clinton received the second-highest (2,268,839).  Green Party candidate Jill Stein came in fourth place, receiving 51,463 votes out of almost 4.8 million votes cast.  Because certification of the election results starts the clock ticking for the filing of any request to recount a race, the Board moved to authorize the staff of the Bureau of Elections to represent the Board in any recount of votes cast at the November 8, 2016 general election.  With respect to recounts, Defendant Director of Elections Christopher Thomas stated that the policy of the Board was to conduct recounts by a hand count, but that the Board could revisit that issue.

Two days later, on November 30, 2016, Plaintiff Stein filed a petition for recount with the Board, requesting a statewide recount and further asking that any recount be done by hand.  The filing to the recount petition triggers certain requirements under Michigan Election Law, Mich. Comp. Laws §§ 168.1 *et seq*.  Notice of the recount had to be given to the other presidential candidates within 48

---

[1]  The results are available on the Department of State's website at http://miboecfr.nictusa.com/election/results/2016GEN_CENR.html. Attached is a copy of the transcript of that public meeting.

1

hours of the filing, Mich. Comp. Laws § 168.882(1), and those candidates had 7 days within which file a counter petition or objections to the recount petition, Mich. Comp. Laws § 168.882(2)-(3).  Also, Defendant Director of Elections Christopher Thomas and the Bureau of Elections began preparing for the conducting of the recount.

On December 1, 2016, an objection to Ms. Stein's recount petition was timely filed on behalf of Mr. Donald Trump.  The objections raised three arguments in opposition to the petition:  (1) that Ms. Stein was not an aggrieved candidate for purposes of filing the petition, (2) that a recount could not be completed before the requirements of federal law regarding the counting of the electoral votes became operative, and (3) that Ms. Stein's petition was not properly sworn under Massachusetts law.  *Id.*  The filing of the objections halted the recount process until the objections were ruled on by the Board.  Mich. Comp. Laws § 168.882.

Late the same day, Ms. Stein filed a response to Mr. Trump's objections. She asserted that she was an "aggrieved" candidate as that law has been interpreted in Michigan; that the argument the recount could not be timely completed was speculative and not a proper objection to the form of the petition; and that her petition was properly sworn.

On December 2, 2016, at 9:30 a.m., the Board met to rule on the objections as required by law. However, before the Board convened, Director Thomas and the board members were served with a complaint for mandamus and bypass application to the Michigan Supreme Court by Attorney General Bill Schuette. See *Attorney General v. Board of State Canvassers, et al.*, Michigan Court of Appeals Case No. 335947, and Michigan Supreme Court No. 154862.[2] The Board recessed for a brief time to review the lawsuits, reconvened, and then moved to go into closed session to discuss the litigation with their undersigned counsel. The Board reconvened and turned to consideration of the objections.

Attorneys for Mr. Trump argued their objections to the Board, and the attorney for Ms. Stein argued in opposition to the objections. At the conclusion of the attorneys' arguments, Board Member Shinkle moved that the Board approve the objection to the petition that it did not comply with the law because Ms. Stein did not sufficiently allege or identify how she was aggrieved by the results of the election. Board Member Pero added the she considered the petition deficient in that it did not allege the nature of the fraud or mistake believed to have occurred in canvass as required by Mich. Comp. Laws § 168.879(1)(f). The motion failed on a

---

[2] The Board and Director Thomas were also served with another complaint for mandamus filed in the Ingham County Circuit Court by a political action committee. See *Ziegler v Board of State Canvassers, et al.*, Circuit Court No. 16-901-CZ (Jamo, J.).

2-2 vote.[3]  The Board thereafter heard testimony from several citizens, including a clerk who discussed issues relating to the use of hand counts and machine counts for conducting a recount.  Subsequently, Member Shinkle moved that the Board conduct the recount by a machine count instead of a hand count.  The motion failed on a 2-2 vote.  After additional comments from Mr. Trump's and Ms. Stein's attorneys, Member Shinkle moved that the Board stop the recount process when it becomes evident that it is mathematically impossible for Ms. Stein to prevail.  That motion failed as well on a 2-2 vote. Shortly thereafter, the Board recessed the meeting.

Because no objection to Ms. Stein's petition was sustained, the recount may proceed.  However, the law provides that the recount may not begin until two business days have elapsed since the Board's determination of the objections.  Mich. Comp. Laws § 168.882(3).  Absent judicial intervention, the recount will begin Wednesday, December 7, 2016.

After the meeting, the State Defendants were served with another complaint for mandamus in the Michigan Court of Appeals and a bypass application in the Michigan Supreme Court on behalf of Mr. Trump, which lawsuit raises arguments

---

[3] Under Michigan law, a motion is not approved if the Board's vote is tied.  Mich. Comp. Laws § 168.22d (2).  The Board consists of four members, a majority shall not be composed of members of the same political party.  1963 Mich. Const. art. 2, § 7. The board shall consist of 2 members from each major political party.  Mich. Comp. Laws 168.22(3).

similar to the objections filed with Board of State Canvassers. See *Trump v. Michigan Board of State Canvassers, et al.,* Michigan Court of Appeals No. 335958, and Michigan Supreme Court No. 154868.

The State Defendants have been ordered to respond to the two Court of Appeals complaints for mandamus by noon on Monday, December 5, 2016, and to the Attorney General's bypass application in the Michigan Supreme Court by noon on Tuesday. The Attorney General has requested relief from the Michigan Courts by 5:00 p.m. on Tuesday, December 6, 2016. All of these lawsuits argue that Michigan's appellate courts should stop or enjoin the recount process.

## ARGUMENT

### I. Plaintiffs fail to meet the standards required for granting temporary injunctive relief.

#### A. Standards for granting temporary injunctive relief.

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982). Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998); *Vittitow v.*

5

*Upper Arlington*, 43 F.3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007). While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). The moving party must establish its case by clear and convincing evidence. *See Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968). The Sixth Circuit has held that the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *Workman v. Bredesen*, 486 F. 3d 896 (6th Cir. 2007); *Gentile Prods., supra*.

**B.    Analysis**

Plaintiffs cannot establish the four requirements necessary for granting temporary injunctive relief, and the ex parte motion should be denied.

### 1.    The State Defendants have not been afforded sufficient process.

At the outset, the State Defendants assert that Plaintiffs' ex parte request for a temporary restraining order should be denied because Defendants have not been afforded sufficient service of process. Plaintiffs filed the instant complaint late

Friday, December 2, 2016.  Plaintiffs have neither served Defendants nor provided the undersigned counsel with any courtesy copies of the complaint, motion, and brief for injunctive relief until the morning of the hearing.  Plaintiffs' counsel and Defendants' counsel were all at the December 2 meeting, at which Plaintiffs' counsel could have advised defense counsel of the impending filing.  Defense counsel has not had any meaningful opportunity to discuss the complaint and request for injunctive relief with the State Defendants.  Moreover, one of the Defendants is a Board comprised of four members who have had differing views regarding the recount proceedings at issue; yet defense counsel has been compelled to provide a perfunctory response and defense to the request for injunctive relief without conferring with their clients.  This lack of notice and process in a case involving something as significant as a statewide recount of Michigan's presidential election warrants denial of Plaintiffs' request for temporary injunctive relief.

### 2. Plaintiffs cannot demonstrate a substantial likelihood of success on the merits.

Plaintiffs argue that the Michigan Election Law's requirement that a recount begin after two business days have elapsed after objections to the petition have been resolved violates the federal Equal Protection Clause, the Due Process Clause, and the First Amendment.  These arguments are not likely to succeed on the merits.

### a. The doctrine of laches bars Plaintiffs' suit.

Plaintiffs' suit should be dismissed based on laches. The defense of laches is rooted in the principle that "equity aids the vigilant, not those who slumber on their rights." *Lucking v. Schram*, 117 F.2d 160, 162 (6th Cir. 1941). An action may be barred by the equitable defense of laches if: (1) the plaintiff delayed unreasonably in asserting his rights; and, (2) the defendant is prejudiced by this delay. *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Here, Plaintiffs helped create their asserted emergency situation by delaying the filing of the recount petition to the very last day possible, when they could have filed it any time after the November 8, 2016 election. *See Santia v. Board of State Canvassers*, 391 N.W.2d 504 (1986). The late filing of the recount petition resulted in all of the statutory deadlines arising close in time to the federal deadlines regarding the Electoral College. The State Defendants are prejudiced by this delay because they have an interest in an orderly and efficient recount process, which has built into it a two-day delay for the potential judicial resolution of any challenge to a recount. Mich. Comp. Laws § 166.882(3)("The board of state canvassers shall not begin a recount unless 2 or more business days have elapsed since the board ruled on the objections under this subsection, if applicable."). Plaintiffs could have initiated

this process earlier, but did not do so. This delay, especially with respect to an election issue, warrants a dismissal based on laches.

### b.     This Court should abstain.

The Supreme Court has explained that "*Burford* abstention is appropriate where timely and adequate state-court review is available and (1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989)).

As noted above, there are four lawsuits pending – two in the Court of Appeals and two in the Michigan Supreme Court – all of which seek to stop the recount process. Plaintiffs can move to intervene or otherwise participate in those lawsuits and raise their constitutional concerns regarding Mich. Comp. Laws 168.882(3) to the state appellate courts. Indeed, Plaintiff's counsel was aware of the Attorney General's lawsuit by early Friday morning. Whether this statute regarding the timing of the recount process, particularly as applied to presidential elections, is constitutional presents a difficult question of state law—what it means

for a candidate to be "aggrieved" under Mich. Comp. Laws § 168.769(b)—bearing on policy problems of substantial public import whose importance transcends the case at bar. Further, exercise of federal review of the question in this case would be disruptive of Michigan's efforts to establish and maintain a coherent policy with respect to a matter of substantial public concern—the orderly conducting of recounts of elections. This Court should thus abstain in this case.

### c. Plaintiffs cannot meet the requirements necessary for granting declaratory relief.

A district court generally considers five factors to determine whether a case is appropriate for declaratory judgment: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used for the purpose of "procedural fencing" or "to provide an arena for *res judicata*;" (4) whether the use of a declaratory judgment would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; (5) whether there is an alternative remedy which is better or more effective. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

Plaintiffs cannot meet these factors. First, it is unclear whether a declaratory action would settle any controversy because the Michigan appellate courts have before them complaints for mandamus requesting that the recount process be stopped altogether, among other requests for relief. If the Michigan courts grant

10

such relief, Plaintiffs' claim here is unavailing. Second, for the same reason, Plaintiffs' declaratory action would not serve any useful purpose in clarifying the legal relations in issue since the state courts may decide as a matter of state law that no recount should proceed under the state statutes governing recount procedures. Third, Plaintiffs' request for declaratory relief from this Court when state court proceedings are already underway is plainly "procedural fencing" or an attempt "to provide an arena for res judicata" with respect to the state courts. Fourth, issuance of a declaratory judgment in this case would increase friction between our federal and state courts and improperly encroach upon state jurisdiction with respect to a matter that is entrusted by the U.S. Constitution to the states– the conducting of elections. U.S. Const. art. 1, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof ..."). And fifth, Plaintiffs have an alternative remedy which is better or more effective: they may move to participate in the pending state court proceedings. In this way, the Michigan state courts would have the first opportunity to interpret Michigan's election law and determine its constitutionality. For these reasons, this Court should decline to exercise jurisdiction over Plaintiffs' complaint.

### d. Michigan Compiled Law § 168.882(3) is not unconstitutional.

Given that Defense counsel was notified on Saturday, December 3rd at 8:21 p.m. of this Court's intent to hold a hearing on Plaintiffs' motion for temporary restraining order at 10:30 a.m. on Sunday, December 4th, Defendants have not had adequate time to prepare substantive arguments with respect to Plaintiffs' claims that the Michigan statute violates the Equal Protection Clause, the Due Process Clause, and the First Amendment.  But statutes duly enacted by state legislatures are presumptively constitutional, and Defendants assert that the statute is constitutional.  Michigan's Election law builds in a two-day waiting period following the Board of State Canvassers' resolution of objections, which allows any candidates opposing the recount an opportunity to seek judicial review, such as has occurred in this case.  A short waiting period helps guard against unnecessary expense should a Michigan state court determine that a recount should not go forward.  There is nothing unconstitutional with respect to this process and (as the next section explains), Michigan votes will be counted when the Electoral College meets.

### 3. Plaintiffs have not demonstrated irreparable harm.

Plaintiffs do not argue that *they* will be irreparably harmed if an injunction is not issued, but rather that all Michigan voters will be harmed because any delay in the recount threatens the Electoral College process.  This assertion is completely

untrue. On November 28, 2016, the Defendant Board fulfilled its duty of canvassing and certifying the results of the November 8, 2016 general election under §§ 168.841 and 168.842 of the Michigan Compiled Laws. Under § 168.46, "[a]s soon as practicable" after the Board's certification, the Governor must certify to the United States Secretary of State the names and addresses of the electors of the State chosen as electors for president and vice president. Mich. Comp. Laws § 168.46. This process has been completed. Michigan's certified slate of electors was transmitted to the appropriate official in Washington, D.C. on December 2, 2016. These electors will meet on December 19, 2016 to cast their electoral votes for their candidates. See Mich. Comp. Laws § 168.47; 3 U.S.C. § 7 ("[E]lectors of President and Vice President of each State shall meet and give their votes on the first Monday after the second Wednesday in December next following their appointment at such place in each State as the legislature of such State shall direct."). The official votes of Michigan's electors will then be sent to Congress for counting along with the electoral votes of the other States, and an official declaration of the winner of president and vice president. 3 U.S.C. § 15.

Accordingly, Michigan is in no danger of not having its electoral votes counted by Congress on January 6, 2016. The December 13, 2016, date noted by Plaintiffs is a deadline created by federal law under 3 U.S.C. § 5 for the determination of any challenge to the appointment of a state's electors. The

13

section creates a "safe harbor" – as the complaint itself acknowledges at ¶22 – for a state's resolution of a challenge to its electors if the final determination is "made at least six days prior to said time of meeting of the electors," which is December 19, 2016, as noted above. *Id.* See also *Bush v Palm Beach Co Canvassing Bd*, 531 US 70, 77 (2000). If the six-day conditional deadline is not met, Congress does not have to accept the state's recount determination as "conclusive" when it meets to count the electoral votes on January 6. *Id*. at 77-78. Thus, Michigan is not required to finish any recount by December 13, 2016, but if it does not do so by the 13th, and the results of the election somehow change, which Plaintiff Stein and her counsel have publicly stated is unlikely, Congress would not have to accept this recount determination and any revised slate of electors as "conclusive."

Moreover, at the December 2, 2016, meeting Defendant Director Thomas asserted that it was unclear at this time whether or not the recount could be completed by December 13. Thus, Plaintiffs' argument is speculative at this time since a recount may, in fact, be concluded by the 13th, thus any order granting injunctive relief would be premature.

### 4. Defendants and the Public will be harmed by issuance of an injunction.

Contrary to Plaintiffs' assertions, the State Defendants and the Public will be harmed by any injunction. Should this Court issue an injunction requiring Defendants to immediately proceed with the recount, it may place Defendants at

14

odds with any order issued by the Michigan Court of Appeals or Michigan Supreme Court, which have been asked to stop the recount altogether. Indeed, the Attorney General has requested such relief be ordered by 5:00 p.m. on Tuesday, December 6 – a mere two days from now. And if no such order issues, the recount will begin the next day on Wednesday, December 7. Where Plaintiffs have not demonstrated any irreparable harm, there is no good reason to put the State Defendants at risk of being subject to conflicting state court and federal court orders.

In fact, the Public will also be harmed by an injunction. As the Chief Justice of the Supreme Court has stated, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (internal quotation omitted). The Michigan statute at issue here, Mich. Comp. Laws § 168.882(3), is a validly enacted election statute that reflects the policy of the People, and enjoining it constitutes harm to the State and its citizens. These factors thus weigh against granting any injunctive relief.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, the State Defendants respectfully request that this Court deny Plaintiffs' motion for temporary restraining order.

                              Respectfully submitted,

                              Aaron D. Lindstrom (P72916)
                              Solicitor General
                              Counsel of Record

                              *s/Denise C. Barton*
                              Denise C. Barton (P41535)
                              Heather S. Meingast (P55439)
                              Erik A. Grill (P64713)
                              Assistant Attorneys General
                              Attorneys for Defendants
                              Civil Litigation, Employment &
                              Elections Division
                              P.O. Box 30736
                              Lansing, Michigan  48909
                              517.373.6434

Dated:  December 4, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

                              *s/Denise C. Barton*
                              Denise C. Barton (P41535)
                              P.O. Box 30736
                              Lansing, Michigan  48909
                              517.373.6434
                              Email:  bartond@michigan.gov
                              P41535