UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL STEIN, et al.,

       Plaintiffs,                                  Case No. 16-14233
                                                    Hon. Mark A. Goldsmith

vs.

CHRISTOPHER M. THOMAS,
et al.,

       Defendants.
_____/

## OPINION & ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Dkt. 2)

      Plaintiffs Dr. Jill Stein and Louis Novak were, respectively, a presidential candidate and a Michigan voter, in the presidential election held on November 8, 2016. Defendants are officials charged with administering the election in Michigan, which includes recounting the votes and certifying the results.

      On November 30, 2016, Stein filed a petition seeking a statewide recount of the election. Pl. Br. at 2 (Dkt. 2-1). The recount was set to begin on December 2, 2016, but the day before, President-elect Donald J. Trump filed objections to Stein's petition. Id. at 3. On December 2, 2016, the Michigan State Board of Canvassers deadlocked as to Mr. Trump's objections, resulting in an automatic rejection of Mr. Trump's objections. See Defs. Resp. at 3-4 & n.3 (citing Mich. Comp. Laws § 168.22d(2)) (Dkt. 6). The objections are currently the subject of litigation in the Michigan Court of Appeals, with an application for by-pass pending in the Michigan Supreme Court.

1

Pursuant to Michigan law, the resolution of these objections prohibited Michigan officials from beginning the recount until two business days had passed. See Mich. Comp. Laws § 168.882(3) (providing in part that "[t]he board of state canvassers shall not begin a recount unless 2 or more business days have elapsed since the board ruled on the objections under this subsection, if applicable."). Because this two-day period spanned a weekend, the delay would amount to 4 days total, with the recount tentatively scheduled to commence on either the evening of December 6 or the morning of December 7, 2016. See Brewer Decl. at 3 (Dkt. 3).

This four-day delay made unavailable about one-third of the time allocated to complete the recount, on the assumption that the recount would have to be completed by December 13, 2016 — the so-called "safe harbor" date for the selection of presidential electors. See Pls. Br. at 4; Defs. Resp. at 13-14; 3 U.S.C. § 5. Without completion of the recount, any controversy regarding which candidate's electors had been elected in the November 8 election might ultimately be decided by Congress, rather than conclusively determined by Michigan. Plaintiffs allege that: (i) the recount is essential for a proper recording of voters' preferences, and (ii) if not completed by the "safe harbor date," voters will lose the right of having their actual selection of presidential electors tabulated free from possible contravention by Congress. Accordingly, Plaintiffs filed a complaint and this motion for a temporary restraining order or preliminary injunction, asking this Court to enjoin Defendants from delaying the recount until December 7, 2016.

## DISCUSSION

To determine whether to grant a preliminary injunction or temporary restraining order, a district court must consider: (i) whether the movant has a strong likelihood of success on the merits; (ii) whether the movant would suffer irreparable injury without the injunction; (iii)

whether issuance of the injunction would cause substantial harm to others; and (iv) whether the public interest would be served by the issuance of the injunction. Baker v. Adams Cnty./Ohio Valley Sch. Bd., 310 F.3d 927, 928 (6th Cir. 2002). These four factors "are factors to be balanced, not prerequisites that must be met." Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 230 (6th Cir. 2003).

Plaintiffs have shown a likelihood of success on the merits of their claim that the two business day waiting period, as applied in this case, would likely violate their right to vote under the First and Fourteenth Amendments. The Supreme Court has recognized that while the Constitution itself accords no right to vote for presidential electors, a state's decision to allow voters to make that decision creates a right to vote that is deemed "fundamental." Bush v. Gore, 531 U.S. 98, 104 (2000) ("When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental . . . ."); see also League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 476 (6th Cir. 2008) ("The right to vote is a fundamental right, preservative of all rights."). When that right is burdened, courts must engage in a careful analysis of the magnitude of the infringement and the countervailing interest of the state. As the court explained in Burdick v. Takushi, 504 U.S. 428 (1992):

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.
>
> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. But

3

> when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

Id. at 434 (quoting Anderson v. Celebrezze, 460 U.S. 780, 788, 789 (1983)).

Here, there is a right to a recount provided by state law, designed to ensure a fair and accurate election. Plaintiffs invoke that right, claiming that a delay in the recount will jeopardize it. Defendants do not dispute that the loss of a recount right would impair the right to vote. Rather, they claim that Mich. Comp. Laws § 168.882(3) is not unconstitutional because of the state's interest in avoiding the cost of starting a recount effort that may later be halted through judicial review of the Board of Canvassers' rejection of an objection to the recount. See Defs. Resp. at 12 ("A short waiting period helps guard against unnecessary expense should a Michigan state court determine that a recount should not go forward.").

However, with the perceived integrity of the presidential election as it was conducted in Michigan at stake, concerns with cost pale in comparison. Historically, courts have assigned diminished weight to a state's financial interest when constitutional rights are at stake. See, e.g., Shapiro v. Thompson, 394 U.S. 618, 633 (1969), overruled in part on other grounds by 394 U.S. 618, 634 (1969). Such concerns are further reduced when taking into account the fact that Plaintiffs have paid the fee required by law for the recount — $973,250. See Brewer Decl. at 2. This fee undoubtedly covers the cost of starting the recount roughly a day or two before it would otherwise commence if the two-day rule were observed.

Plaintiffs have also shown the likelihood of irreparable harm. Where a plaintiff's constitutional rights are at issue, the movant need only show that his rights are "threatened," from which showing "a finding of irreparable injury is mandated." Am. Civil Liberties Union of Kentucky v. McCreary Cnty., Ky., 354 F.3d 438, 445 (6th Cir. 2003), aff'd sub nom. McCreary

4

Cty., Ky. v. Am. Civil Liberties Union of Ky., 545 U.S. 844 (2005) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)).

Plaintiffs here have shown a credible threat that the recount, if delayed, would not be completed by the "safe harbor" day. Defendant Christopher Thomas, the Director of Elections with the Michigan Secretary of State's office, testified at the motion hearing that a recount as originally conceived — an 11- or 12-day period starting on December 2, consisting of 11-hour days, see Pls. Br. at 3 — "would have been very difficult itself." He could not state that the recount would be completed on time even in the "best case scenario," which entails "no delays or undue challenging." According to Thomas, to complete a recount by December 13 if its start date were delayed until December 7 would be a "monumental undertaking." The best he could say was that "we'll make a run at it." Such uncertainty shows that there is a credible threat to the voters' right to have a determination made that Michigan's vote for president was properly tabulated.

The issuance of temporary relief will not cause substantial harm to others. As emphasized earlier, budgetary concerns are not sufficiently significant to risk the disenfranchisement of Michigan's nearly 5 million voters. Further, Plaintiffs' payment of nearly a million dollar fee further reduces any such harm: in the event that the recount is canceled for whatever reason, Stein's filing fee will be made available to the extent necessary to cover all expenses.

Finally, the public interest would be served by the issuance of temporary relief. The fundamental right invoked by Plaintiffs — the right to vote, and to have that vote conducted fairly and counted accurately — is the bedrock of our Nation. Without elections that are

conducted fairly – and perceived to be fairly conducted – public confidence in our political institutions will swiftly erode.

Defendants' arguments in opposition to Plaintiffs' motion are unavailing. First, Defendants have not shown that the doctrine of laches should apply. There is a strong presumption that a filing delay is reasonable when the filing complies with the limitations period, see Chirco v. Crosswinds Cmtys. Inc., 474 F.3d 227, 233 (6th Cir. 2007), and no one disputes that Stein's petition for a recount was timely filed. In such a case, the presumption can be overcome by a showing of undue prejudice to the non-movant. Id. at 234. The Michigan governmental defendants offered no reason to believe that they have been prejudiced; indeed, accelerating the recount will likely ease their burden somewhat. Intervenor Michigan Republican Party briefly argued that the changes to the recount schedule have caused it some logistical problems concerning flight and hotel reservations booked for people it had retained to participate in the recount, but (i) this concern must yield to the constitutional rights at issue here; and (ii) the recount was scheduled to last until December 13, 2016, so it seems unlikely that all or most of these plans were significantly altered in light of the delay and the proximity of the delay to the original recount commencement date.

Defendants' arguments concerning declaratory relief, see Defs. Resp. at 10, are likewise rejected, for the simple reason that Plaintiffs' motion seeks a temporary restraining order – not declaratory relief. "The Court has recognized that different considerations enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other." Roe v. Wade, 410 U.S. 113, 166 (1973), holding modified by Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833 (1992) (citing Zwickler v. Koota, 389 U.S 241, 252-255

6

(1967)). And even if the Court adopted the analytical framework advanced by Defendants, it would not change the result.

Finally, the Court rejects Defendants' arguments for Burford abstention. See Defs. Br. at 9 (citing Caudill v. Eubanks Farms, Inc., 301 F.3d 658, 660 (6th Cir. 2002)); see generally Burford v. Sun Oil Co., 319 U.S. 315 (1943). Burford involved a complex regulatory scheme, and federal intervention there "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 727 (1996). "[T]he power to dismiss recognized in Burford represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." Id. at 728. Here, the requested temporary restraining order would not do violence to Michigan's scheme, which does not appear complex, and the fact that the challenge to the statute is an as-applied challenge means that, with the exception of the instant case, Michigan's voting policy will remain intact.[1]

## CONCLUSION

For the above reasons, Defendants and any persons acting in concert with them are ordered to cease any delay in the commencement of the recount of the presidential vote cast in Michigan as of noon on December 5, 2016. At that time, the recount shall commence and must continue until further order of this Court. Defendants shall instruct all governmental units

---

[1] Although Defendants point out that they were not formally served, the Court conducted a hearing at which Defendants' counsel fully participated. Also present were Defendant Thomas and counsel for intervenor Republican Party of Michigan. In these circumstances, Defendants have had effective notice of the proceedings.

participating in the recount to assemble necessary staff to work sufficient hours to assure that the recount is completed in time to comply with the "safe harbor" provision of 3 U.S.C. § 5.[2]

SO ORDERED.

Dated:  December 5, 2016　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 5, 2016.

　　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　　Case Manager

---

[2] No bond will be required because the recount fee paid of nearly one million dollars will provide sufficient funds from which to compensate Michigan for the start of the recount before December 7, should the recount later be halted.