UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JILL STEIN and LOUIS NOVAK,

               Plaintiffs,

  -against-                                  No. 2:16-cv-14233-MAG-EAS

CHRISTOPHER THOMAS, in his official
capacity as Director of Elections; and JEANETTE
BRADSHAW, NORMAN D. SHINKLE, JULIE
MATUZAK, and COLLEEN PERO, in Their
Official Capacities as Members of the Board of
State Canvassers,

  -and

BILL SCHUETTE, Attorney General, and
MICHIGAN REPUBLICAN PARTY,

               Intervenors-Defendants.
_____/

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' AND
INTERVENOR-DEFENDANTS' EMERGENCY MOTIONS TO IMMEDIATELY
RESOLVE THE TEMPORARY RESTRAINING ORDER**

Goodman Acker, P.C.
17000 W. Ten Mile Road, 2nd Floor
Southfield, MI 48075
(248) 483-5000

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

i

## PRELIMINARY STATEMENT

Plaintiffs face the same constitutional harms that they faced before this Court on Sunday, and will suffer the same irreparable harm if the temporary restraining order is dissolved: the inability to avail themselves of a state-created, constitutionally protected right. As the Sixth Circuit has already ruled, those harms require the TRO to remain in place.

Defendants' motion[1] erroneously rests on the Michigan Court of Appeals' decision that Plaintiff is not an "aggrieved person" for purposes of MCL 168.879, but under Article II of the United States Constitution, Plaintiffs' right to a recount springs directly from the Michigan State Legislature. U.S. Const. Art. II; *see also Bush v. Gore*, 531 U.S. 98 (2000). Because Article II confers the authority to select electors to the legislature and the legislature alone, any state court interpretation of the contours of that right cedes to intent of the legislature, as reflected in the text of the law itself. *See Bush v. Gore*, 531 U.S. 98 (2000). In other words, it does not matter what dictionary definition of "aggrieved" the state courts choose to adopt; Plaintiffs' rights exist regardless.

Under binding Supreme Court precedent, this Court has independent constitutional authority—and an independent obligation—to interpret the Michigan election law to confer the full scope of rights intended by the legislature and, when in doubt, to defer to the determination of the Board of State Canvassers, not the state courts. Here, any coherent reading of MCL 168.897 shows that Dr. Stein adequately alleged that she is "aggrieved" under Michigan law and is therefore entitled to a recount.

---

[1] Defendants Christopher Thomas, Colleen Pero, Norman Shinkle, along with Intervenor-Defendants Michigan Republican Party and Bill Schuette, filed separate motions seeking to dissolve or set aside this Court's temporary restraining order, asserting nearly identical arguments. *See* ECF Nos. 26, 28, and 29. This memorandum of law is filed in opposition to each of these motions.

Moreover, it would premature for the Court to dissolve its temporary restraining order at this juncture, while Plaintiffs are appealing the Michigan Court of Appeals' decision to the Michigan Supreme Court and are likely to succeed in that forum. Not only does the Michigan Court of Appeals' decision lack authority in this Court, but it is wrong as a matter of law and likely to be overturned shortly. Given the irreparable harm that the Sixth Circuit has affirmed Plaintiffs face if their rights are violated, and the fact that any harm if the recount continues pales in comparison to the harm of lost voting rights if it does not, the only available course is to wait *at least* until Michigan Supreme Court rules before taking any action to dissolve the stay. This Court should not render Plaintiffs' rights meaningless before they are fully adjudicated.

## ARGUMENT

### I. THE STATE COURT'S DECISION DOES NOT AFFECT THIS COURT'S ORDER, WHICH IS BASED ON MICHIGAN'S GRANT OF A FUNDAMENTAL RIGHT TO A RECOUNT

#### A. Plaintiffs' Right to a Recount Derives from the Michigan Legislature, and the State Court Ruling Does Not Impede It

Plaintiffs have a right to a recount granted to them by the Michigan legislature, and the state court's ruling has no effect on that claim. "[O]nce a state legislature vests its citizens with election rights, those rights are fundamental and are protectable by the First and Fourteenth Amendment." *Stein v. Thomas*, No. 16-2690, Slip Op. at 5 (6th Cir. Dec. 6, 2016) (citing *Bush v. Gore*, 531 U.S. 98, 104 (2000); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008). Plaintiffs are entitled not to have that right rendered meaningless by failure to have the recount completed in time for it to affect the state's delegation to the Electoral College.

Intervenor-defendant Schuette's arguments take for granted that this court is obligated to defer to the state court on issues of state law. While that is ordinarily true, the

2

unique circumstances of this case confer the exact opposite responsibility on this Court. As the Supreme Court explained in a *per curiam* decision that constitutes binding precedent on this Court: "As a general rule, this Court defers to a state court's interpretation of a state statute. But *in the case of a law enacted by a state legislature applicable not only to elections to state offices, but also to the selection of Presidential electors*, the legislature is not acting solely under the authority given it by the people of the State, but by virtue of a direct grant of authority made under Art. II, § 1, cl. 2, of the United States Constitution." *Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (emphasis added). In such cases, federal courts are charged with protecting the Article II powers of the legislature by determining "whether the decision of [a state] court changed the manner in which the State's electors are to be selected, in violation of the legislature's power to designate the manner for selection under Ar. II, § 1, cl. 2, of the United States Constitution."

Justice Rehnquist, concurring in *Bush v. Gore*, 531 U.S. 98, 104, 112 (2000), reiterated the duty that the Constitution confers on federal courts to ensure that state election law adheres to legislative intent:

> In most cases, comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law. That practice reflects our understanding that the decisions of state courts are definitive pronouncements of the will of the States as sovereigns. . . . But there are a few exceptional cases in which the Constitution imposes a duty or confers a power on a particular branch of a State's government. This is one of them. Article II, §1, cl. 2, provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct," electors for President and Vice President. (Emphasis added.) Thus, the text of the election law itself, and not just its interpretation by the courts of the States, takes on independent significance.

Plaintiffs' entitlement to a recount therefore derives directly from the text of the Michigan election law. A state court's distorted interpretation of that text is meaningless in light of the

3

clear language that the text employs, and which binds this Court. *See Roe v. State of Ala. By and Through Evans*, 43 F.3d 574 (11th Cir. 1995) (setting aside state court interpretation of absentee voting requirements that was contrary to the plain language of the statute).

### B. The Plain Text of the Michigan Election Law, as Written By the Michigan Legislature Confers Plaintiff a Right to a Recount

Dr. Stein's recount petition "alleges that [she] is aggrieved on account of fraud or mistake," and it therefore entitles her, and all voters, to a recount under the plain terms of MCL 168.879(1)(b). Michigan law directs that "[t]he board of state canvassers, at as early a date as possible after the receipt of [a recount] petition and the deposits required, *shall* . . . cause a recount of the votes cast in the several precincts included in the petition." MCL 168.883 (emphasis added). The law *requires* the Board to conduct a recount upon receipt of a petition and deposit, which Dr. Stein filed on November 30. The State's interest in allowing recounts to proceed expeditiously and fairly is so great that under the law, any public official engaged in the conduct of a recount who "willfully commit[s] any act which shall interfere with a fair and impartial recount" is guilty of a felony. MCL 168.887. In turn, any failure to conduct this recount in time for it to be meaningful in the state's selection of electors is, as both this Court and the Sixth Circuit recognized, an infringement on Plaintiffs' due process and equal protection rights to avail themselves of "their state-recognized recount right entirely." *Stein v. Thomas*, No. 16-2690, Slip Op. at 6 (6th Cir. Dec. 6, 2016).

Schuette argues that Dr. Stein "is not an 'aggrieved' candidate entitled to a recount under Michigan law," but the only authority he cites is today's Court of Appeals decision. But that decision is wrong and has no authority in this court. By reading into the Michigan election code a contorted, hyper-narrow definition of "aggrieved," the Court of

4

Appeals engaged in *exactly* the judicial interpretation of a state legislative presidential election scheme that the Supreme Court proscribed as a violation of Article II:

> Isolated sections of the code may well admit of more than one interpretation, but the general coherence of the legislative scheme may not be altered by judicial interpretation so as to wholly change the statutorily provided apportionment of responsibility among these various bodies. In any election but a Presidential election, the Florida Supreme Court can give as little or as much deference to Florida's executives as it chooses, so far as Article II is concerned, and this Court will have no cause to question the court's actions. But, with respect to a Presidential election, the court must be both mindful of the legislature's role under Article II in choosing the manner of appointing electors and deferential to those bodies expressly empowered by the legislature to carry out its constitutional mandate.

*Id.* at 114. Here, the Court of Appeals determined that "to meet the 'aggrieved' candidate requirement under 879(1)(b), the candidate must be able to allege a good faith belief that but for mistake or fraud, the candidate would have a had a reasonable chance of *winning* the election." Mich Ct. App. Op. at 5 (emphasis added). This standard summarily alters "the general coherence of the legislative scheme," *see Bush*, 531 U.S. at 114, that this Court correctly found confers a right to a recount and "is designed to ensure a fair and accurate election," ECF No. 16 at 4. Worse yet, it does so by raising hurdles that are completely untethered to the will of the legislature and that disregard the constitutional interests that candidates and voters have to ensure that votes are counted fairly, regardless of the margin of the decision.

The Michigan Court of Appeals' ruling narrows the definition of "aggrieved" to mean only "deprived of victory," but there is no indication that the legislature intended such a limitation, especially given the numerous interpretations of the word. *See, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "aggrieved" as "angry or sad on grounds of perceived

5

unfair treatment"). The requirement imposed by the Court of Appeals here—that to file a recount, a candidate must prove a likelihood of winning but-for fraud—is found nowhere in the statute.

### 1. A Constitutional Injury Is a Grievance Under the Statute

There is certainly no indication that the legislature meant to exclude from the term "aggrieved" injuries stemming from violations of candidates' and voters' constitutional rights to have votes tallied without fraud. A candidate's interest in having her voters' support accurately registered—and voters' interest in having their votes accurately registered—are protected by both the First Amendment to the U.S. Constitution. *See, e.g., Illinois State Bd. of Electors v. Socialist Workers Party*, 440 U.S. 173 (1979) (confirming Constitutional interest of minor party to appear on ballot and receive votes); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) ("the right of qualified voters, regardless of their political persuasion, to cast their votes effectively"). The Michigan Court of Appeals may see no value in these interests—and thus nothing to grieve if they are violated—but the federal constitution does. The legislature has vested a fundamental right to a recount in *any* candidate who in good faith alleges injury by error or fraud, notwithstanding the Michigan Court of Appeals' ruling to the contrary.

Article II further requires deference to the decision-making authority of the Board of State Canvassers on matters relating to the selection of presidential electors, a directive that the Court of Appeals likewise disregarded, further undermining the legislature's authority by virtue of Article II. In *Bush v. Gore*, Justice Rehnquist cautioned that "with respect to a Presidential election, the court must be both mindful of the legislature's role under Article II in choosing the manner of appointing electors and deferential to those bodies expressly empowered by the legislature to carry out its constitutional mandate." *Bush*, 531 U.S. at 114 (Rehnquist, J., concurring). The Court of Appeals gave no deference to the

Michigan Board of State Canvassers—the body "expressly empowered by the legislature to carry out its constitutional mandate"—in its reasonable interpretation of state law and execution of its duties. To the extent that this Court seeks guidance from any state authority regarding the intent of the Michigan Law, it should look to the body specifically authorized to implement it—the Board of State Canvassers—and not the state courts. And that body, in its proper exercise of authority, overruled objections to Plaintiff Stein's petition, determined that Plaintiff Stein was an "aggrieved person" under the law, and scheduled the recount to proceed.

### 2. The Statute's Provisions, Read As a Whole, Provide a Right to Petition for *Both* Potential Winners and Other Candidates

When all provisions of the statute are read as a whole, it becomes clear that the legislative purpose behind MCL 168.879 is not merely to confirm true winner in a close election. Michigan law governing recount petitions differentiates between candidates who are close enough to win following a recount and those who are not, and it allows *both* types of candidates to petition. Under MCL 168.867(2), if the "official canvass of votes shows that the number of votes separating the winning candidate and the petitioner is more than 50 votes or 0.5% of the total number of votes cast in the race [well above the margin between the top two candidates in this election], whichever is greater," the petitioner must deposit with her petition the sum of $125.00 for every precinct in which a recount is sought. Otherwise, if the petitioning candidate is close enough to win as a result of the recount as defined by the statute, she must pay a check of $25.00 per precinct. *Id.* § 168.867(1). Clearly, then, the legislature intended for *all* candidates who believe themselves aggrieved by a vote count in any way to be able to petition for a recount, and not just those close enough to win. The Michigan Court of Appeals' reading of the statute, which ignores this provision and therefore cannot possibly reflect the intent of the legislature, should be afforded no weight.

7

### 3. The Legislature Did Not Adopt a Scheme that Would Violate Equal Protection

The legislature's intent in allowing every allegedly "aggrieved" candidate could also not have been limited to potential winners, because that would violate the Equal Protection Clause and First Amendments, which recognize an interest among voters and their favored candidates to associate and have their votes accurately counted that is not contingent on their being members of the major parties. It is well-settled that a state may not unduly privilege the voting rights of major parties and burden those of others. *See Anderson v. Celebrezze*, 460 U.S. 780, 787 ("The right to vote is 'heavily burdened' if that vote may be cast only for major-party candidates at a time when other parties or other candidates are 'clamoring for a place on the ballot.'" (quoting *Williams v. Rhodes*, 393 U.S. 23, 31 (1968)).

The only interest that intervenor-defendants have ever identified in their efforts to interfere with the ongoing recount is the cost to the state. Apparently, they see no value in expending state resources to ensure that *all* candidates—whether major party candidates or otherwise—have had their votes accurately counted. The legislature, however, disagrees. It addressed the intervenor-defendants' concerns not by barring minor party candidates from vindicating their constitutional rights, but by charging them a higher fee to do so. Any greater burden on their interests would not be justified and would violate equal protection. That is clearly not a result that the legislature intended.

## II. PLAINTIFFS WILL FACE IRREPARABLE HARM IF THE COURT PREMATURELY DISSOLVES ITS ORDER

The Court must refrain from dissolving the temporary restraining order in light of Dr. Stein's intention to appeal the Michigan Court of Appeals' erroneous decision. In light of this appeal, dissolution of the TRO is, at the very least, premature. As the Sixth Circuit

8

recognized, if Dr. Stein has a right to a recount under state law, and "[i]f the recount could not be completed by the federal deadline," that right to a recount will be "effectively worthless." *Stein v. Thomas*, No. 16-2690, Slip Op. at 5 (6th Cir. Dec. 6, 2016).

There is therefore clear, irreparable harm if the Court were to dissolve the TRO only for the decision of the Michigan Court of Appeals to be overturned. If this situation were to occur, the recount could stop upon the dissolution of the TRO, only to restart again after the Court of Appeals' opinion is vacated. Halting and restarting this statewide recount would result in critical time lost toward completing this effort by December 13th, recreating the same constitutional violation that this Court sought to avoid—and the Sixth Circuit held must be avoided—by means of a TRO in the first place. As the Sixth Circuit recognized, Plaintiffs have "made an extremely strong showing of irreparable harm" stemming from "their state-recognized recount right." *Id.* at 5, 6.

For the reasons stated above, the Michigan Court of Appeals erroneously concluded that Dr. Stein's Petition failed to meet the requirement of Mich. Comp. Law 168.879(1)(b) as a matter of state law. In holding that Dr. Stein "has not alleged, and cannot allege in good faith" that she is aggrieved, Mich. Ct. App. Op. at 6, the court ignored the allegations in plain terms on the face of her petition that she is "aggrieved on account of fraud or mistake in the canvass of the votes . . . ." Instead of concluding, as it should have, that this language complies with state law, the Michigan Court of Appeals chose to read into the statute a requirement that is not there—namely, that a candidate must be able to prove that she can change the results of the election in her favor in order to receive a recount under Michigan law. To reach this conclusion, the court defined "aggrieved" in narrow terms and relied on cases, none of which are in the election law context, to do so. See Mich. Ct. App. Op. at 5 n. 2 (citing

9

environmental, family law, and employee benefits cases, none of which construed Mich. Comp. Law 168.879).

Because there is a strong likelihood that Dr. Stein will succeed in establishing her right to a recount in state court—where any likelihood would do—the TRO must remain in place and the recount continue.

### III. PLAINTIFFS HAVE A CONSTITUTIONAL RIGHT INDEPENDENT OF STATE LAW

In addition to their state law recount, for the reasons stated in Plaintiffs' brief in support of their motion for a TRO, during oral argument on that motion, and in their brief in the Sixth Circuit, Plaintiffs are entitled to a meaningful recount, completed by December 13, under the First and Fourteenth Amendments. In light of the vulnerabilities of Michigan's election equipment, officials' failure to secure that equipment or verify its accuracy, the special circumstances of this election revealing the true dangers of such vulnerabilities, and the ready availability of a recount, proceeding with the recount is constitutionally required to ensure that Michiganders not only cast votes but had them reliably counted.

Dated: December 7, 2016
       Southfield, Michigan

                                        EMERY CELLI BRINCKERHOFF
                                        & ABADY LLP

                                        Jessica Clarke
                                        Hayley Horowitz
                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020
                                        (212) 763-5000

GOODMAN ACKER, P.C.

__/s/ Mark Brewer_____

Mark Brewer (P35661)
17000 W. Ten Mile Road, 2nd Floor
Southfield, MI 48075
(248) 483-5000
mbrewer@goodmanacker.com

*Attorneys for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2016, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ *Jennifer Suidan*
Jennifer Suidan